UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIK D. CHITWOOD,

       Petitioner,

v.                        Case No: 2:15-cv-457-FtM-99MRM

FLORIDA ATTORNEY GENERAL,
THOMAS REID, Warden, and
SECRETARY, DOC,

       Respondents.[1]

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Erik D. Chitwood ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed July 29, 2015). Petitioner attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Lee County, Florida for burglary of an unoccupied structure, grand theft, fleeing or attempting to elude law enforcement officers, fraudulent use of a credit card, and violation of probation. <u>Id.</u> Respondent filed a response to the

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

petition (Doc. 9).  Petitioner filed a reply (Doc. 14), and the case is now ripe for review.

Petitioner raises four claims in his petition.  He asserts that: (1) Counsel was ineffective for failing to communicate a favorable plea offer and for failing to advise Petitioner of his maximum sentencing exposure; (2) Counsel was ineffective for failing to investigate and call law enforcement witnesses at the sentencing hearing in support of a substantial assistance agreement; (3) Counsel was ineffective for acting under an actual conflict of interest; and (4) Counsel was ineffective for failing to properly inform Petitioner of the consequence of entering an open plea to the court under the habitual offender statute (Doc. 1 at 5-12).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.    Background and Procedural History[2]

On June 22, 2010, the State of Florida charged Petitioner with burglary of a conveyance in case number 10-CF-017018 (Ex. 1). Petitioner entered a plea of no contest and was placed on probation for thirty months (Ex. 2; Ex. 3).  In May, June, and July of 2010, the State of Florida filed affidavits alleging violations of Petitioner's probation, and a warrant for his arrest was issued (Ex. 4; Ex. 5; Ex. 6; Ex. 7).  On September 4, 2012, Petitioner's probation was revoked, and he was sentenced to five years in prison (Ex. 8; Ex. 9).

On August 16, 2011, Petitioner was charged with burglary of a structure, grand theft, and fraudulent use of a credit card in Lee County case number 11-CF-17746 and with burglary of a structure, grand theft, and fleeing or attempting to elude a law enforcement officer in Lee County case number 11-CF-017748 (Ex. 10; Ex. 16). On December 7, 2011, he was charged with burglary of a structure and grand theft in Lee County case number 11-CF-19597 (Ex. 19).

On May 29, 2012, Petitioner entered an open plea of no contest in each case (Ex. 11; Ex. 17; Ex. 21; Ex. 25).  On September 4, 2012, Petitioner was sentenced as a habitual felony offender to ten years on prison on each burglary charge and to five years in

_____

[2] References to exhibits are to those filed by Respondent on January 5, 2016 (Doc. 12).

prison on each of the remaining counts (Ex. 14; Ex. 18; Ex. 22; Ex. 26). Petitioner did not appeal his conviction or sentences.

On August 17, 2013, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 27). The post-conviction court denied each claim, and Florida's Second District Court of Appeal affirmed (Ex. 31; Ex. 33); Chitwood v. State, 172 So. 3d 876 (Fla. 2d DCA 2015).

Petitioner signed the instant petition on July 21, 2015 (Doc. 1).

## II.  Governing Legal Principles

### A.  The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a

specific legal rule that has not been squarely established by [the Supreme] Court." <u>Knowles</u>, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013) (same).

**B.   Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. <u>Id.</u> This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.

Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]"  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In the context of a guilty plea, the first prong of Strickland requires that a petitioner show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56-59 (1985). The second prong requires that the petitioner show a reasonable probability that, but for counsel's errors, he would have entered a different plea. Id.

### III. Analysis

**A.   Claims One and Four**

In Claim One, Petitioner asserts that defense counsel Ryan Downey[3] failed to communicate a favorable plea offer and misadvised him as to the maximum sentence he faced if he entered an open plea

---

[3] Petitioner was represented by two separate attorneys during his criminal proceedings.  The post-conviction court explained:

> At first, Defendant was represented by the Office of the Public Defender (hereinafter PD) in all of the above cases and at the time of the plea hearing. Thereafter the PD withdrew due to a conflict of interest.  At the time of sentencing, Defendant was then represented by the Office of Regional Counsel (hereinafter RC).   However,  the  PD  testified  at  the sentencing hearing, after Defendant requested that the PD testify and waived his privilege.

(Ex. 31 at 3).

to the court (Doc. 1 at 4).  Specifically, he asserts that Downey

"never informed the Petitioner that the State offered a 48-month

plea offer at any time prior to these proceedings.  Most

especially, trial counsel never informed the Petitioner that by

entering this plea, the Petitioner would [be] left susceptible to

the trial judge imposing a 10-year habitual offender sentence upon

the Petitioner." Id. at 5.  Petitioner asserts that, had he known

of the plea deal, he would not have entered an open plea. Id.  In

Claim Four, Petitioner repeats his assertion that Downey failed to

properly inform him about the effects of entering a plea as a

habitual felony offender. Id. at 12.

Petitioner raised these claims in his Rule 3.850 motion, and

the post-conviction court denied them as conclusively refuted by

the record:

> In the first allegation, Defendant alleges
> that counsel was ineffective for failing to
> communicate a favorable plea offer and
> providing affirmative mis-advice concerning
> the maximum sentence that could be imposed
> which caused Defendant to make an open plea to
> the Court. Defendant further alleges that his
> understanding was that the maximum he could be
> sentenced to by making an open plea to the
> Court was 60 months, and less, if his
> agreement to provide substantial assistance to
> law enforcement under a verbal agreement with
> the State Attorney's Office proved fruitful.
> Defendant also alleges that he did not know
> that he could be sentenced as a HFO. Defendant
> also alleges that counsel never told him about
> the State's plea offer of 48 months in prison
> that included a drug treatment program.
> Defendant submits that he would have accepted

> this favorable plea offer, but for counsel's
> mis-advice.
>
> However, Defendant's allegations are
> conclusively refuted by [the] record. All of
> the above issues were discussed at length
> during the plea hearing. It was clear that
> Defendant was making an open plea to the Court
> on all three cases without the benefit of a
> negotiated sentence. It was also explained to
> Defendant that he was facing a maximum
> sentence of 45 years and that some of the
> charges qualified for enhanced sentencing.
> There was also discussion on the record that
> Defendant qualified for HFO sentencing in all
> three cases not just the case the Notice was
> filed in. Moreover, when Defendant was asked
> if anyone promised him anything in exchange
> for the plea, Defendant replied, "[n]o, I was
> told a general idea of what I would receive if
> I cooperated, and I did so. And that's why I'm
> pleading open to the Court." The final
> allegation was that counsel never told him
> about the State's plea offer of 48 months in
> prison that included a drug treatment program
> is also conclusively refuted by the record.
> Defendant referenced the plea offer of 48
> months with drug treatment twice during the
> sentencing hearing.

(Ex. 31 at 3-4) (internal citations to the record omitted).

Florida's Second District Court of Appeal affirmed the post-conviction court's denial of these claims (Ex. 33). Petitioner now argues that the post-conviction court's "decision to deny relief without an evidentiary hearing is a departure from the principals espoused in Strickland, supra." (Doc. 1 at 5). This Court disagrees.

At Petitioner's plea colloquy, he was specifically informed by the state prosecutor that he was eligible for habitual felony

offender sentencing (Ex. 25 at 4-5).  After consulting with Downey, Petitioner indicated that he still wished to enter an open plea.  Id. Petitioner was questioned by the trial court to ensure that he understood the maximum penalty he faced if he entered an open plea.  When asked whether he was been promised anything in exchange for his plea, Petitioner answered that he was "told a general idea of what I would receive if I cooperated, and I did so.  And that's why I'm pleading open to the Court." (Ex. 25 at 12).  The court then questioned Petitioner to ensure he knew he was subject to a sentence up to the statutory maximum of forty years in prison and that some of his sentences could be doubled under the habitual felony offender rules:

> Q.   Do you understand, though, that there is no plea – agreed upon plea negotiation on the table, that you're pleading to the Court and the Court could sentence you up to the maximum for these counts?
>
> A.   Could you repeat that sir?  I'm sorry.
>
> Q.   Do you understand that the Court could sentence you up to the maximum period of incarceration for these counts by your entry of a plea today because there is no negotiated plea that's on the table?
>
> A.   Pre-arranged, negotiated plea.  I'm under – unfortunately, I'm aware of that.
>
> Q.   Okay.  And the maximum number of years for these charges before the habitual felony offender notice is 45 years in the Department of Corrections.  I'm not saying that's what you would get, but you understand that is the maximum sentence --

A.   I understand.

Q.   -- with the – with the VOP.  We haven't
     gotten to the VOP yet.  But 40 years for
     the charges we were just discussing.  And
     some of these qualify as habitual felony
     offenders, which could be doubled.   Do
     you understand all that?

A.   I do now.

Q.   Okay.  And you understand that the Court
     could sentence you up to the maximum of
     these cases by entry of your plea today?

A.   I do now.

                    . . .

Q.   Are you satisfied with the advice and
     counsel of your attorney?

A.   Yes, I am.

Q.   Has he answered all your questions and
     done everything you asked him to do in
     this case?

A.   He's been – he's been – yes.

Q.   Has he discussed the minimum and maximum
     sentences the Court could impose under
     each of the counts?

A.   Yes.

(Ex. 13-25).  The representations of a defendant in open court

"carry a strong presumption of verity."  Blackledge v. Allison,

421 U.S. 63, 74 (1977).  Given his sworn statements at the plea

colloquy, and the trial court's thorough explanations, Petitioner

cannot show Strickland prejudice from Downey's alleged failure to

advise him that he faced more than five years in prison as a

habitual felony offender.  Whatever failure Downey may have made

in that regard, the trial judge adequately explained Petitioner's sentencing exposure. See United States v. Shedrick, 493 F.3d 292, 300 (3d Cir. 2007) ("[D]efense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion.").

Further, as noted by the post-conviction court, during his sentencing hearing, Petitioner specifically referenced the earlier plea offer of four years in prison followed by a drug offender program (Ex. 26 at 47-48) ("The last offer [the prosecutor] had offered me was four years and to drop two charges and to allow me into a program."). Petitioner indicated that he rejected the plea offer because he hoped to receive a lesser sentence of eighteen to twenty-four months in prison in exchange for providing assistance to the police. Id. at 48. The post-conviction court reasonably concluded that Petitioner was aware of the state's offer prior to entering the open plea to the court.

Petitioner has made no showing that the state court's assessment of these claims under Strickland was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." Burt v. Titlow, 134 S. Ct. 10, 16 (2014). Accordingly, Petitioner is not entitled to federal habeas relief on Claims One or Four.

**B.    Claim Two**

Petitioner asserts that sentencing counsel Steven Zapora was ineffective for failing to investigate and call certain law enforcement witnesses at Petitioner's sentencing hearing to support his claim that he provided substantial assistance to law enforcement (Doc. 1 at 7).  Petitioner raised this claim in his Rule 3.850 motion, where it was denied by the post-conviction court on the ground that Petitioner could not demonstrate prejudice:

> Defendant alleges that counsel was ineffective for failing to investigate and call law enforcement officers to testify concerning his substantial assistant (sic) agreement with the State. Defendant further alleges if Detective O'Brien from the Fort Myers' Police Department, and Detectives Green and Neumann from the Lee County Sheriff's Office had been called to testify the outcome would have been different. However, Defendant admits and the record shows that Detective O'Brien did testify at the September 4, 2012, sentencing hearing. Detective O'Brien's testimony was, basically, that none of the information provided by Defendant produce[d] any useful results. Defendant also admits that Detective Neumann was subpoenaed but he "failed to answered [sic] his subpoena to appear at sentencing." Defendant further alleges that counsel should have requested a continuance until Neumann could appear. Apparently, Green was not subpoenaed. However, Defendant alleges that if Green and Neumann had appeared they would have testified that Defendant substantially assisted in their investigations, which would have resulted in a more lenient sentence.
>
> Even though Detectives Green and Neumann did not testify, Defendant, the PD, and Detective O'Brien offered testimony concerning his

> substantial assistance to the Lee County Sheriff's Office. Also, when the State was questioning the PD, he stated that "according to the detectives [his information] was essentially useless to them...." Even after hearing all the evidence, the Court stated, "I don't think there was an agreement. I don't think it was broached. And I don't think any of the mitigating circumstances are enough to go below guidelines." Therefore, Defendant cannot show prejudice for failing to call Neumann and Green to testify when their testimony would have been cumulative and, more importantly, not helpful.

(Ex. 31 at 4-5) (internal citations to the record omitted). Florida's Second District Court of Appeal affirmed (Ex. 33). Petitioner argues that the state courts' rejection of this claim was contrary to both Strickland and Williams v. Taylor, 529 U.S. 362 (2000) (Doc. 1 at 8).[4]  A review of the record supports a conclusion that Petitioner cannot demonstrate Strickland prejudice from the absence of the detectives' testimony.

At the sentencing hearing, Downey (Petitioner's prior counsel) testified that, although there was no formal agreement with the state, he understood that if Petitioner provided valuable information about the criminal activity in which he and others were involved, the state might have been "able to get in the 18 month to 24 month range with – with a program or something like

_____

[4] In Williams, the United States Supreme Court found the death-sentenced petitioner's counsel ineffective for failing to present substantial mitigation evidence at the sentencing phase of trial.

that – somewhere in that area." (Ex. 26 at 19, 22). Downey then affirmed that, even though the information provided by Petitioner was "essentially useless" to the police, the state had offered a lenient sentence of 48 months in prison, to be followed by a drug treatment program because Petitioner had attempted to cooperate with the police. Id. at 22. Fort Myers Police Department Detective O'Brien testified that the information provided by Petitioner was not useful, primarily because it was stale information from before he was in custody or concerned criminal activity outside her jurisdiction. Id. at 27-28.[5]

Although Petitioner asserts that, had Zapora called them to testify at the sentencing hearing, Detectives Green and Neumann would have testified that Petitioner did in fact provide substantial assistance to the police, he has not provided any evidence to the Court in support of his assertion. He does not explain the nature of the assistance he provided to these detectives, nor does he provide a sworn statement of these detectives' putative testimony. Consequently, the claim is too speculative to warrant relief. See Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus

---

[5] Petitioner was in custody for about six months prior to meeting with the police (Ex. 26 at 28, 54).

petition.' ") (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)); see also United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness by affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

The state courts' adjudication of the issues raised in Claim Two were neither contrary to, nor an unreasonable application of Strickland or Williams.  Nor was the adjudication based upon an unreasonable determination of the facts.  Claim Two is denied. 28 U.S.C. § 2254(d).

**C.   Claim Three**

Petitioner asserts that Zapora was ineffective because he "labored under an actual conflict of interest." (Doc. 1 at 9). Specifically, he asserts that he (Petitioner) provided confidential information to law enforcement officers concerning John Link, another jail inmate, who was also represented by Counsel for a period of time, presumably on unrelated charges. Id. Petitioner asserts that Zapora "informed Mr. Link that Petitioner had provided substantial assistance agreement to the L.E.O.'s concerning his case." Id. at 10.  He claims that the conflict resulted in Zapora's failure to act in Petitioner's best interest at the sentencing proceedings - namely, he claims that Zapora

failed to call Detectives Neumann and Green to testify at the sentencing proceedings because of this conflict. Id.

Petitioner raised a similar claim in his Rule 3.850 motion, and the post-conviction court denied it on the ground that Petitioner failed to demonstrate the existence an actual conflict of interest:

> Defendant alleges that RC [regional conflict counsel] was ineffective for failing to withdraw after a second conflict of interest developed when RC was representing both Defendant and Lee County Jail Inmate, John Link, for a period of six weeks. Defendant alleges that he was also providing the State information on Link, and was in fear of the potential harm that may have come to him if other inmates knew he was assisting police. However, in order to prevail on this allegation, Defendant must establish that an actual conflict of interest existed that adversely affected his lawyer's performance. Hunter v. State, 817 So. 2d 786, 791 (Fla. 2002). Defendant has failed to show that counsel was acting for the benefit of another defendant or person, or for counsel's own personal benefit. Therefore, Defendant has failed to meet his burden.

(Ex. 31 at 5-6). Florida's Second District Court of Appeal affirmed (Ex. 33). Petitioner again asserts that the state courts' rejections of this claim were contrary to Strickland (Doc. 1 at 11). However, a review of the record supports the state courts' conclusions that Petitioner failed to show how Zapora's representation of Link had an adverse effect on his representation of Petitioner.

On federal habeas review, ineffective assistance claims alleging that an attorney engaged in concurrent multiple representations of defendants with conflicting interests are governed by Cuyler v. Sullivan, 446 U.S. 335 (1980). Under the rule in Sullivan, prejudice is presumed if the petitioner can demonstrate an actual conflict of interest that affected his attorney's performance. See Strickland v. Washington, 466 U.S. 668, 692 (1984) ("Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' ") (quoting Sullivan, 446 U.S. at 348, 350). Petitioner, presumably relying in on Sullivan, asserted in his Rule 3.850 motion that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." (Ex. 27 at 24). Respondent also appears to rely on Sullivan and urges that, "[w]here a defendant claims that his attorney represented conflicting interests, he is not required to demonstrate prejudice under Strickland." (Doc. 9 at 10-11)(citing Gonzales v. Mize, 565 F.3d 373, 381 (7th Cir. 2009)).

The Court disagrees that Petitioner has no obligation to demonstrate Strickland prejudice in the instant case; the Strickland prejudice standard applies when, as here, the quality of representation is alleged to have been compromised by a conflict

other than the concurrent representation of co-defendants. See Mickens v. Taylor, 535 U.S. 162, 174-75 (2002) (noting, in dicta, that, although Courts of Appeals have applied Sullivan "unblinkingly to all kinds of alleged attorney ethical conflicts," including "when representation of the defendant somehow implicates counsel's personal or financial interests," the "language of Sullivan itself does not clearly establish, or indeed even support, such expansive application") (internal citations and quotation marks omitted). Although the Mickens observation was dicta, the Eleventh Circuit has expressly agreed with the decision, stating that, "there is no Supreme Court decision holding that any kind of presumed prejudice rule applies outside the multiple representation context." Schwab v. Crosby, 451 F.3d 1308, 1327 (11th Cir. 2006). Petitioner does not allege that Link was Petitioner's co-defendant in any case or that he and Link had competing interests which foreclosed Zapora from adequately representing Petitioner.[6] Therefore, Petitioner must demonstrate Strickland prejudice before he is entitled to habeas relief on Claim Three. See Hunter v. Sec'y, Dep't of Corr., 395 F.3d 1196, 1201-02 (11th Cir. 2005).

Even if this Court were to apply the Sullivan standard to this case, Petitioner has presented nothing but mere speculation

---

[6] Zapora no longer represented Link at the time of Petitioner's sentencing hearing.

that Zapora's performance at sentencing was affected by the alleged conflict.    Although Petitioner now asserts that there is a "reasonable probability" Zapora would have called Detectives Neumann and Green at the sentencing hearing had there not been a conflict of interest, he points to nothing in the record to support a conclusion that Zapora did not call these witnesses due to his representation of Link or that the sentencing court imposed a harsher sentence because of these witnesses' failure to testify. Notably, Detective Neumann was subpoenaed by Zapora, but failed to show at the hearing (Ex. 27 at 14).    Zapora's issuance of a subpoena to Detective Neumann is inconsistent with Petitioner's current assertion that Zapora deliberately failed to call him as a witness due to a conflict.   Moreover, a review of the sentencing transcript does not suggest that the outcome of the sentencing hearing was affected in any manner by the alleged conflict. Petitioner's prior counsel testified at the sentencing hearing that Petitioner met with three police detectives and provided them with information regarding the identity of a person in a surveillance video and the location of stolen property (Ex. 26 at 18-19).   He also testified that Petitioner attempted to assist the police, but that the agencies did not find Petitioner's information helpful. Id. at 20-22.   Zapora offered the testimony of Pastor John Burroughs who testified that Petitioner would have a place in a drug rehabilitation program if released from confinement. Id. at

30-32.  Petitioner's former wife asked the Court to send him to a strict drug rehabilitation program.  Id. at 36.  Petitioner testified that he committed the crimes due to a serious drug problem, but that he was attempting to turn his life around.  Id. at 36-40.  He told the sentencing court that he had identified Tamara Stackhouse to Detective O'Brien as the person in a surveillance video and told the detective where to find a briefcase and tools he had stolen.  Id. at 44-45.  He argued that he was entitled to an 18 to 24 month sentence based on information provided to Detectives O'Brien and Green. He explained that he turned down the state's four-year plea offer, "which did include a drug program" because he felt entitled to "be sentenced underneath the guidelines for my mitigating circumstances." Id. at 48.  Zapora also argued for a downward departure at Petitioner's sentencing hearing based on mitigating circumstances. Id. at 60. The sentencing court determined that no agreement had been reached between Petitioner and the state regarding Petitioner's assistance to the police, and stated that none of the mitigating circumstances were "enough to go below guidelines." Id. at 62.  Nothing in the record suggests that the hypothetical testimony of Detectives Green and Neumann would have altered Petitioner's sentence or benefited Link at Petitioner's expense. See discussion supra Claim Two (noting that a defendant cannot simply state that a missing

witness' testimony would have been favorable because self-serving speculation will not sustain an ineffective assistance claim).

The Florida courts did not unreasonably apply <u>Sullivan</u> or <u>Strickland</u> in finding that Petitioner failed to demonstrate how an actual conflict of interest adversely affected Zapora's performance. Accordingly, Petitioner is not entitled to federal habeas relief on Claim Three.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IX. Certificate of Appealability Pursuant to 28 U.C.S. § 2253(c)(1)[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether he is entitled to a certificate of appealability.

- 24 -

claims debatable or wrong," _Tennard v. Dretke_, 542 U.S. 274, 282 (2004) (quoting _Slack v. McDaniel_, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," _Miller-El v. Cockrell_, 537 U.S. 322, 335-36 (2003) (citation omitted). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he may not appeal _in forma pauperis_.

Therefore, it is now **ORDERED AND ADJUDGED**:

1. The Florida Attorney General is dismissed from this action.

2. Each claim in Petitioner's 28 U.S.C. § 2254 petition is **DENIED**.

3. Petitioner is **DENIED** a certificate of appealability.

4. The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___11th___ day of July, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Erik D. Chitwood
Counsel of Record